ROCKINGHAM, DECEMBER, 1878.

---

COOK *& a.* *v.* CURTIS *& a.*

By *s.* 6, of *c.* 104, Gen. St., requiring the owner or master of a vessel to pay pilot fees, whether he employed a pilot or not, the master was not com‑ pelled to surrender the control of his ship to the pilot, nor prevented from continuing in the command of his ship ; and the presence of a pilot em‑ ployed by the master did not relieve the owner from liability for damage done by a collision with another vessel.

On the question whether fastening a vessel at a certain place was a negli‑ gent act of the master, evidence of the information and advice upon which he acted is competent.

CASE, against the owners of a brig, for damage done to the plain‑ tiffs' schooner by a collision caused by the negligent handling of the brig. The brig sailed into the Piscataqua, with a pilot on board, cast anchor, dragged her anchor by force of the ebb-tide, and drifted against the schooner which was fastened to a wharf. The court in‑ structed the jury that the presence of the pilot did not relieve the defendants from liability ; and the defendants excepted.

On the question of the care exercised by the master of the schooner in fastening her where he did, Broughton, the occupant of the wharf, was allowed to testify, subject to the defendants' exception, that he informed the master what the depth of the water was at the wharf, and told him it would be proper for him to haul in to the wharf and lie over ebb-tide. Verdict for the plaintiffs.

*Frink*, for the defendants.

1. The employment of the first pilot, who offered his services to the brig, was compulsory. Gen. St., *c.* 104, *s.* 6 ; *The China*, 7 Wall. 55 ; *The Carolus*, 2 Curtis 71 ; *The City of Cambridge*, L. R. 4 Adm. & Ecc. 161—S. C., L. R., 5 P. C. 451. The burden was on the plain‑ tiffs to show negligence in the defendants or their servants, as distinguished from the negligence of the pilot. *Clyde N. Co.* v. *Barkley*, L. R. 1 App. Cas. 790. The pilotage being compulsory, the owners are not liable in a suit at law for injuries resulting from the

fault of the pilot. In a suit at law, the obligation imposed upon the owners must result from the relation of master and servant. When the employment of the pilot is compulsory, this relation does not exist in any form to give rise to such a responsibility. The law cannot select and compel under penalties the employment of a certain servant, and impose upon the party obeying its mandate any obligation from his acts, his negligence, or his incapacity. According to some decisions in maritime courts, where a remedy is sought *in rem*, the rule is different, because the law there imposes a lien upon the offending vessel.

2. Broughton's statements to the master of the schooner were hearsay. The furthest the plaintiffs should have been permitted to go was to prove that the master acted on Broughton's advice. By proving what Broughton said, his statement of the depth of the water and his opinion of the propriety and prudence of hauling in to the wharf and lying there over ebb-tide were introduced as substantive testimony for the consideration of the jury.

*John Hatch,* for the plaintiffs.

1. The fact that the brig was in the charge of a pilot will not relieve the owners from liability *(Denison* v. *Seymour,* 9 Wend. 9; *The Diana,* 1 Wm. Rob. 136; *Yates* v. *Brown,* 8 Pick. 23; *The Julia M. Hallock,* 1 Sprague 539; *The Massachusetts,* 1 Wm. Rob. 371), unless they were compelled to take a pilot by the requisition of law enforced by a penalty *(Camp* v. *Marcellus,* 1 Clif. 481; *The Carolus,* 2 Curt. 71; *The Minna,* L. R. 2 Adm. & Ecc. 97), or unless they show the pilot was alone in fault. *Smith* v. *Condry,* 1 How. 28; *Camp* v. *Marcellus,* 1 Clif. 481.

2. Broughton's testimony tended to show that the master of the schooner exercised due care in selecting a berth for his vessel.

FOSTER, J. Under Gen. St., *c.* 104, *s.* 6 (repealed by Laws of 1874, *c.* 1), any master or owner might pilot his own vessel; but if, in a certain case, a pilot offered his service to a vessel and the master declined to employ him, he was entitled to half of his fee, and on refusal of payment could recover it by suit. The licensed pilot who first offered his service was entitled to a certain fee if his offer was accepted, and to half as much if his offer was not accepted. This statute did not require the master to accept the pilot's service, and did not impose a penalty for not accepting it. The amount of the fee for piloting a vessel was fixed for the general purpose of providing an adequate compensation for actual service beneficial to the party receiving it, and to prevent controversy as to what would be a reasonable sum. And the payment of half of the fee, when the offered service was declined, was required, not as a penalty, but for the special purpose of encouraging the constant and active pursuit of an occupation considered essential to a general and extensive commerce.

The payment of the half fee, like the payment of the whole fee, was the compulsory maintenance of a business by those for whose benefit it was carried on. In *The China*, 7 Wall. 53, 57, Mr. Evarts argued that the pilotage regulations of New York were simply in support of the emoluments of the pilot service, provided by the state in aid of the commerce of its ports. The majority of the court, rejecting this view, held that the compulsory payment of the pilot's fee when he was not employed was a penalty. In the decision, it was suggested that if the law gave the vessel or cargo to the pilot, or imposed fine or imprisonment upon the master when he refused to take the pilot on board, it would enjoin the duty of taking him, under a penal sanction; and that the difference is only in the degree of compulsion. But the only alternative the law gave the master of *The China* was, to take the pilot on board, or not to take him. It required the master to pay the pilot's fee, whether he took him or not. And if the law had given the vessel to the pilot, or imposed fine and imprisonment upon the master whether he took the pilot or not, the forfeiture of vessel or cargo, or the fine and imprisonment, would have been as much a penalty for taking the pilot as for not taking him.

And even if the obligation to pay the whole or half of the pilot's fee were construed as a duty to employ the pilot, it could not be construed as a duty to surrender to him the entire and absolute control of the vessel. A legislative intention to deprive the master of his entire command could not be presumed from the duty of employing a pilot who might be useful as an adviser and assistant, without suspending the master's authority. The statutory duty of employing him would not transfer to him a charge of navigation which was not given him by the common maritime law. As was said in *The China* (pp. 67, 68), the master has the same power to displace the pilot that he has to remove any subordinate officer. As a matter of fact, ordinary prudence may make it the duty of the master to obey some orders of a pilot whose special knowledge may be supposed to be trustworthy. But the law does not make it the master's duty to allow his manifestly careless or incompetent pilot to wreck his own vessel or injure another. The presence of the pilot on the brig did not relieve the defendants from liability for a collision caused by their officers or crew. His presence, without any participation in the management of the vessel, and without any negligence on his part, was immaterial. If the law had authorized him to take exclusive charge of the schooner, and to exact obedience from the officers and crew, the questions would be whether he exercised his power, whether the collision happened through his negligence, and whether the law imposed an exceptional liability upon ship-owners for the fault of a person whom they did not voluntarily employ, and whom neither they nor their servants did or could control.

The testimony of Broughton was competent. It was proper for the plaintiffs to show not only that the master of their vessel acted upon the information and advice given him by Broughton, but also that the

information and advice were such as a prudent man, in the master's situation, would have acted upon.

Smith, J. did not sit.                    *Judgment on the verdict.*